UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

HEYDI MACHADO SERRANO;               §
ROSARIO CADENA CASTRO;               §
KERLIN YAQUELI GALDAMEZ              §
COTO; LUANA APARECIDA                §
MARTINS DE SOUZA; LUCIA              §
RAMIREZ RODRIGUEZ DE                 §
TAPERIA; MIRNA YANIRA                §
BARRIOS ALEGRIA; FATIMA DEL          §
CARMEN CHAVARRIA MARTINEZ;           §
ARMINDA MARINA ZACARIAS              §
ROBLERO; NELLY JAMILETH              §
FAJARDO MORAN; RAQUEL                §
ABIGAIL MENDEZ ORDONEZ;              §
MARIA RIVAS IRAHETA; DINA            §
ROSIBEL MEJIA RODRIGUEZ;             §
LUCIA RAMOS TUM; JESSICA             §
CAROLINA CRUZ MEJIA; and             §
GLADYS IMELDA CRUZ JIMENEZ,          §
                                     §
        Petitioners,                 §
                                     §
v.                                   §        CIVIL NO. 18-CV-722-DAE
                                     §
JEFFERSON SESSIONS III, Attorney     §
General of the United States; ROSE   §
THOMPSON, Warden of the Karnes       §
County Residential Center; JUANITA   §
HESTER, Assistant Field Office       §
Director for the San Antonio District of §
ICE; ENRIQUE LUCERO, Field Office    §
Director for the San Antonio District of §
ICE; RONALD D. VITIELLO, Deputy      §
Director and Acting Director of ICE; §
and KIRSTJEN M. NIELSEN, Secretary   §
of the Department of Homeland        §
Security,                            §
                                     §
        Respondents.                 §

## DISMISSAL ORDER

Before the Court is the 28 U.S.C. § 2241 Habeas Corpus Petition filed by Heydi

Machado-Serrano ("Machado-Serrano"), Rosario Cadena Castro ("Castro"), Kerlin Yaqueli

Galdamez-Coto ("Galdamez-Coto"), Luana Aparecida Martins de Souza ("Martins de Souza"), Lucia Ramirez-Rodriguez de Taperia ("Ramirez-Rodriguez de Taperia"), Mirna Yanira Barrios Alegria ("Alegria"), Fatima del Carmen Chavarria-Martinez ("Chavarria-Martinez"), Arminda Marina Zacarias-Roblero ("Zacarias-Roblero"), Nelly Jamileth Fajardo Moran ("Moran"), Raquel Abigail Mendez Ordonez ("Ordonez"), Maria Rivas-Iraheta ("Rivas-Iraheta"), Dina Rosibel Mejia-Rodriguez ("Mejia-Rodriguez"), Lucia Ramos-Tum ("Ramos-Tum"), Jessica Carolina Cruz-Mejia ("Cruz-Mejia"), and Gladys Imelda Cruz-Jimenez ("Cruz-Jimenez"), along with their minor children ("Petitioners") (ECF No. 1); Respondents' Motion to Dismiss (ECF No. 7); Respondents' Advisory to the Court (ECF No. 9); Petitioners' Response to Respondents' Motion to Dismiss (ECF No. 10); and Respondents' Reply (ECF No. 11). Upon consideration, Respondents' Motion to Dismiss (ECF No. 7) is **GRANTED** and Petitioners' § 2241 Petition (ECF No. 1) is **DISMISSED**.

## I. Factual and Procedural Background

Petitioners are citizens of Honduras, Mexico, Brazil, Guatemala and El Salvador, who, along with their minor children, entered the United States on unknown dates and were initially transported to the Karnes Residential Center between June 1, 2018 and June 26, 2018, where they received negative credible fear interview findings. The Immigration Judges ("IJ") reviewing the negative credible fear interview findings for Petitioners Machado-Serrano, Castro, Galdamez-Coto, Martins de Souza, Ramirez-Rodriguez de Taperia, Alegria, Chavarria-Martinez, and Rivas-Iraheta subsequently vacated the decisions but these Petitioners continued to be detained as of the date Petitioners filed their § 2241 Petition. The IJs reviewing the negative credible fear interview findings for Petitioners Mejia-Rodriguez, Ramos-Tum, Cruz-Mejia and Cruz-Jimenez affirmed the decisions and these Petitioners filed Requests for Review but

continued to be detained as of the date Petitioners filed their Petition. Petitioners Zacarias-Roblero, Moran and Ordonez[1] also received negative credible fear interview findings and continued to be detained as of the date Petitioners filed their Petition. All of the Petitioners obtained pro bono legal assistance from the Refugee and Immigrant Center for Education and Legal Services ("RAICES"), which obtained powers of attorney from each Petitioner allowing RAICES to represent Petitioners while they were at housed at the Karnes Detention Center.

On or about July 12, 2018, Immigration and Customs Enforcement ("ICE"), began the transfer of Petitioners, along with their minor children, from the Karnes Detention Center to the South Texas Family Residential Center ("Dilley Detention Center"), located in Dilley, Texas. That same day, counsel for RAICES traveled to the Karnes Detention Center and was advised that the "women were leaving today." The following day, Petitioners filed a § 2241 Habeas Corpus Petition, seeking to challenge their continued detention pending removal by ICE and requesting an emergency expedited hearing. (ECF No. 1). Petitioners allege their continued detention violates their rights to procedural and substantive due process under the Fifth Amendment and that by transferring Petitioners from Karnes, the only location where RAICES is authorized to represent Petitioners, Respondents have denied Petitioners meaningful access to counsel.[2] (Id.).

On July 31, 2018, Respondents timely filed a Motion to Dismiss in which they argue the petition should be dismissed as moot because, with the exception of Petitioners Zacarias-Roblero and Moran, the remaining Petitioners, along with their minor children, have all been released and/or removed. (ECF No. 7). Subsequently, Respondents filed an Advisory, stating that

---

[1] At the time the Petition was filed, only Petitioner Ordonez appears to have requested that an IJ review the negative credible fear interview findings in her case.
[2] Funding for RAICES is limited to legal representation at Karnes County Residential Center or Karnes.

Petitioners Zacarias-Roblero and Moran, along with their minor children, have also been released. (ECF No. 9). Respondents further maintain that to the extent Petitioners Zacarias-Roblero and Moran assert a due process claim, they fail to state a claim for which they are entitled to relief. Finally, Respondents contend that Petitioners' request for mandamus relief also lacks merit and should be denied.

### II. Discussion

#### a. 28 U.S.C. § 2241

Petitioners bring this action pursuant to 28 U.S.C. § 2241, which authorizes a district court to grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Respondents maintain Petitioners' habeas petition is now moot because Petitioners are no longer in the custody of the Respondents and therefore, there is no longer a live habeas case or controversy contained in the Petition. (ECF No. 7).

Generally, a case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (internal citation omitted). However, physical detention is not required for a petitioner to meet the custody requirement and obtain habeas relief. *Rumsfeld v. Padilla*, 542 U.S. 426, 427 (2004) ("[T]he Court's understanding of custody has broadened . . . to include restraints short of physical confinement[.]"); *see also Jones v. Cunningham*, 371 U.S. 236, 239–40 (1963) (recognizing that restraints on liberty other than physical confinement may constitute custody for habeas purposes). Even if a petitioner is no longer in custody, a court can exercise habeas jurisdiction provided the petitioner demonstrates she was in custody when the petition was filed and her subsequent release has not rendered the petition moot, "i.e., that [s]he

4

continues to present a case or controversy under Article III, § 2 of the Constitution." *Zalawadia v. Ashcroft*, 371 F.3d 292, 296 (5th Cir. 2004). "The petitioner presents an Article III controversy when [s]he demonstrates 'some concrete and continuing injury other than the now-ended [detention]'-a 'collateral consequence of the conviction.'" *Id.* at 297 (quoting *Spencer v. Kemna,* 523 U.S. 1, 7, 118 S. Ct. 978 (1998)).

RAICES contends that in transferring Petitioners from Karnes to Dilley, Respondents deprived Petitioners of their right to counsel. They maintain a case and controversy exists as Petitioners have been and continue to be deprived of this right. In support of their position, they rely on *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 565 (9th Cir. 1990) and *Nunez v. Boldin*, 537 F. Supp. 578, 582 (S.D. Tex. 1982). Neither case is supportive.

*Orantes* was a class action suit filed in 1982 against United States government immigration officials by Salvadoran nationals who were eligible to apply for asylum and had been taken into custody. *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370–72 (C.D. Cal. 1982). Their complaint, which sought injunctive relief, alleged that INS officials and Border Patrol Agents prevented class members from applying for asylum and limited their access to counsel. *Id.* at 354. In granting permanent injunctive relief, the district court enjoined INS from coercing Salvadoran detainees into signing voluntary departure agreements and from interfering with their ability to obtain counsel. *Orantes-Hernandez v. Meese*, 685 F. Supp. 1488, 1493–1500 (C.D. Cal. 1988) (*Orantes II*), aff'd sub nom. *Orantes-Hernandez*, 919 F.2d 549. In doing so, the court noted that the detainees were routinely transferred "from the place of arrest to detention

centers located in remote and isolated areas" which frequently resulted in interference with the detainees' right to counsel.[3] *Id.* at 1500.

On appeal, the Ninth Circuit affirmed, finding that the district court's entry of the injunction was not an abuse of discretion. *Orantes-Hernandez*, 919 F.2d 567. With respect to the detainees' complaint that they were denied access to counsel, the Ninth Circuit noted that the Government had not challenged the district court's finding that aliens were often frequently detained "far from where potential counsel or existing counsel were located." *Id.* at 565. The Government had, however, challenged the finding that INS did not notify attorneys that their clients had been transferred; nevertheless, the Ninth Circuit found there was substantial evidence in the record that the detainees were frequently transferred to remote detention centers without notice to counsel and, in some instances, subsequently deported despite the fact that their attorney had filed a Notice of Entry of Appearance with the INS. *Id.* at 566.

*Nunez*, 537 F. Supp. 578, the second case relied upon by Petitioners which was also decided in 1982, involved detainees from El Salvador and Guatemala, who sought injunctive and declaratory relief, alleging they were being detained in a remote area where there were no legal clinics and few private attorneys to represent them in deportation proceedings. *Id.* at 580–81. The district court subsequently issued a preliminary injunction enjoining defendants from (1) scheduling legal proceedings of detainees where a Notice of Appearance had been filed without first providing the attorney with notice, (2) restricting visiting hours unreasonably, and (3) restricting access to detainees by paralegals designated by the attorney. *Id.* at 580, n. 1. The Court noted that the remoteness of the Los Fresnos detention facility warranted special

---

[3] As Respondents note, the *Orantes-Hernandez* case, which was decided in 1988, defined the following as sufficiently "remote" to interfere with access to counsel: El Centro, California; El Paso, Texas; Florence, Arizona; Las Vegas, Nevada; Los Fresnos, Texas; and Oakdale, Louisiana. *Id.* In all likelihood what may be reasonably defined as "remote and inaccessible to counsel" has changed over the last 30 years.

considerations such as allowing attorneys to visit their clients in the evening and permitting the use of designated paralegals and legal assistants to assist counsel with some of the more routine tasks that needed to be completed at the detention center. *Id.* at 582.

In the present case, RAICES does not complain that Petitioners were transferred "far from where potential counsel or existing counsel [was] located" or that visiting hours at Dilley are unreasonably restrictive.[4] Instead, RAICES argues that by transferring Petitioners outside of the Karnes' area, regardless of the location or its proximity, Respondents have deprived Petitioners of their right to counsel because RAICES lacks authority to represent Petitioners anywhere but Karnes. While this restriction is indeed unfortunate, it appears to be entirely attributable to RAICES' policies rather than Respondents' and does not establish Respondents denied or interfered with Petitioners' right to counsel. Ultimately, Congress has given the Attorney General discretion to choose the location where an alien who is in custody may be detained. *See* 8 U.S.C. § 1231(g)(1) ("The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."); *see also Avramenkov v. I.N.S.*, 99 F. Supp. 2d 210, 214 (D. Conn. 2000) (noting that no decisions have authorized injunctive relief prohibiting the Attorney General from exercising his discretion to

---

[4] Although RAICES does allege that Petitioners were transferred without notice to counsel, the ICE/DRO Residential Standard ("RS"), attached to Petitioners' complaint as exhibit A, provides that when a resident is represented by counsel and a [Notice of Appearance] has been filed, the Deportation Staff "shall" notify counsel that the resident is being transferred and include the reason for the transfer, as well as the location and telephone number of the facility. (ECF No. 1 at A, 2-3). Importantly, the RS specifically states that "[f]or security purposes, the attorney shall not be notified of the transfer until the resident is en route to the new Residential location, and the notification shall not include specific travel details (day of travel, mode of travel, etc.). In all cases notification will be made within 24 hours of the transfer." (Id. at 3). RAICES does not allege these procedures were not followed. RAICES also complains that Petitioner Chavarria-Martinez, who received a negative credible fear interview finding on June 14, 2018, was scheduled to appear before the immigration court for an IJ review of her negative credible fear finding. (ECF 1 at 3, 5-6). RAICES maintains "she was obstructed by Defendants-Respondents" from appearing. (Id. at 9). However, Petitioner Chavarria-Martinez, who was in the process of being transferred on the day of the hearing, was subsequently afforded an IJ review of her negative credible fear finding which resulted in the IJ vacating the decision. (Id. at 6). RAICES does not allege they were not notified of this hearing. Petitioner Chavarria-Martinez was later released from detention and appears to have moved to New York. (ECF No. 7, exhibit 14).

select the location where an alien may be detained in the absence of proof of actual interference with an existing attorney-client relationship) (citing *Gandarillas-Zambrana v. Bd. of Immigration App.*, 44 F.3d 1251, 1256 (4th Cir.1995); *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1437–38 (9th Cir. 1986), amended, 807 F.2d 769 (9th Cir. 1986); *Dai v. Caplinger*, 1995 WL 241861 (E.D. La. Apr.25, 1995)). In the present case, the Court finds that transferring detainees from Karnes to Dilley was within the discretion of the Attorney General and does not, in and of itself, implicate Petitioners' access to counsel.

Moreover, the Court notes that the majority of the Petitioners have been released from detention and while their immigration status is still pending, they have, in most instances, moved to other states well outside the Karnes' area.[5] (*See* ECF No. 7). Although RAICES contends Petitioners continue to be deprived of their right to counsel, the fact that these Petitioners have moved well outside of RAICES' geographical confines, placing them even further outside of the reach of RAICES' representation, is not due to any action by Respondents. As the Petitioners who have been removed fail to show they continue to present a case or controversy under Article III., § 2 of the Constitution," their petition should be dismissed. *Zalawadia*, 371 F.3d at 296.

With respect to the Petitioners who have been removed, RAICES seeks to have them returned to the United States "to be restored the position they were in prior to their removal."[6] (ECF No. 10 at 10). Petitioners do not challenge the lawfulness or constitutionality of their brief detention but rather, in seeking to have this Court set aside their orders of removal and "restore" them to the position they were in prior to their removal, appear to challenge their orders of

---

[5] The following Petitioners, along with their minor children, were released and provided addresses within the U.S. where they could be contacted: Chavarria-Martinez; Cruz-Jimenez; Machado-Serrano; Galdamez-Coto; Martins de Souza; Ramirez-Rodriguez de Taperia; Ramos-Tum; Alegria; Castro; Moran; and Zacarias-Roblero.

[6] This includes the following Petitioners, including their minor children: Rivas-Iraheta, Mejia-Rodriguez and Cruz-Mejia.

removal. Even assuming arguendo that this Court has jurisdiction to order the removed Petitioners returned to the United States, the REAL ID Act, "divest[s] federal [district] courts of jurisdiction over § 2241 [habeas] petitions attacking removal orders." *Rosales v. Bureau of Immigration & Customs Enf't*, 426 F.3d 733, 736 (5th Cir.2005).

Pursuant to the Act, "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means of judicial review of an order of removal entered or issued under any provision of [Chapter 12]." 8 U.S.C.A. § 1252(a)(5). Section 1252(e)(1) further limits review of an expedited removal order, providing that no court may enter "declaratory, injunctive, or other equitable relief" pertaining to an expedited removal order except as "specifically authorized in a subsequent paragraph of this subsection." Section 1252(e) specifically provides that:

> Judicial review of any determination made under section 1225(b)(1) of this title is available in habeas corpus proceedings, but shall be limited to determinations of—(A) whether the petitioner is an alien, (B) whether the petitioner was ordered removed under such section, and (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title[.]

*Id.* § 1252(e)(2).

Further, § 1252(e)(5) specifically provides that in determining whether the petitioner was ordered removed under § 1225(b)(1), "the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually admissible or entitled to any relief from removal." *Solis-de Patino v. Pitts*, 823 F. Supp. 2d 457, 460 (W.D. Tex. 2011) (rejecting petitioner's argument that because the original expedited order of removal was not appropriately executed and failed to comply with regulations, the court had jurisdiction to consider "whether such an order was in fact issued");

*see also Osorio-Martinez v. Attorney Gen. United States of Am.*, 893 F.3d 153, 164 (3d Cir. 2018) (citing *Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 428–30 (3d Cir. 2016), cert. denied sub nom. *Castro v. Dep't of Homeland Sec.*, 137 S. Ct. 1581 (2017) (rejecting Petitioners' argument that the court retained jurisdiction to review whether they had been "ordered removed" based on Petitioners' contention that the removal orders were invalid)).

Accordingly, Petitioners' claims lack merit and are **DISMISSED**.

**b. Due Process**

Petitioners also allege that "by removing Plaintiffs-Petitioners from Karnes to an unknown location and/or by denying Plaintiffs-Petitioners access to their lawyers at Karnes, Defendants-Respondents have effectively removed the legal representation of Plaintiffs'-Petitioners," resulting in their denial of access to counsel in violation of the due process clause of the Fifth Amendment. (ECF No. 1 at 9). In analyzing any substantive due process claim, the "threshold question is whether the behavior of the government officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845–854 n.8, 118 S. Ct. 1708 (1998); *Marco Outdoor Advert., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 672 n.3 (5th Cir. 2007).

Here, Petitioners were transferred from Karnes to Dilley after requesting an IJ review their negative credible fear interview findings. Although Petitioners maintain their transfer effectively eliminated their legal representation and resulted in denial of access to counsel in violation of the due process clause of the Fifth Amendment, the decision to transfer aliens is within the Attorney General's discretion. *See* 8 U.S.C. § 1231(g)(1). Further, the Supreme Court has recognized that "any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the

10

maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952); *see also Comm. of Cent. Am. Refugees*, 795 F.2d at 1439–40 (providing that the government's policy of transferring unrepresented aliens to remote detention facilities "did not violate the due process clause or any statutory privilege[,]" and "prudential considerations precluded interference with the Attorney General's [exercise of] discretion" in selecting the detention facilities where aliens are to be detained).

As previously stated, the fact that RAICES was unable to represent Petitioners following their transfer to Dilley was due to the fact that RAICES only had authorization to represent Petitioners in Karnes rather than the result of any behavior on the part of the government officer that was so egregious or outrageous it "may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 845–854 n.8; *Marco Outdoor Advert., Inc.*, 489 F.3d at 672 n.3. As Petitioners fail to allege any facts from which this Court may reasonably conclude that Respondents engaged in outrageous or egregious conduct that could be said to shock the conscience, Respondents' motion to dismiss is **GRANTED** as to Petitioners' due process claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *Bonitto v. Bureau of Immigration & Customs Enf't*, 547 F. Supp. 2d 747, 755 (S.D. Tex. 2008) (dismissing substantive due process claim arising from a detention challenged under *Zadvydas v. Davis*, 533 U.S. 678 (2001)).

### c. Mandamus relief

Petitioners maintain a writ of mandamus should issue to require Respondents to rectify the injustice they have inflicted upon Petitioners by acting to deny them access to counsel. A writ of mandamus should issue when a petitioner has presented a clear right to the relief, the defendant has a clear duty to perform the act in question, and no other adequate remedy is available. *See Iddir v. I.N.S.*, 301 F.3d 492, 499 (7th Cir. 2002).

For reasons previously stated, Petitioners have failed to show their attorneys cannot access the facility at Dilley or why the transfer from Karnes to Dilley interfered with Petitioners' access to counsel other than arguing that counsel's own geographical limitations precluded them from representing Petitioners outside the Karnes' area. Accordingly, their request for mandamus relief is **DENIED**.

### III. Conclusion

For the foregoing reasons, the Court enters the following Orders:

**IT IS ORDERED THAT** Respondents' Motion to Dismiss (ECF No. 7) is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioners' § 2241 Petition (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE.**

**FINALLY IT IS ORDERED THAT** all pending motions, if any, are **DENIED as MOOT.**

**IT IS SO ORDERED**.

**DATED:** San Antonio, Texas, September 17, 2018.

David Alan Ezra
Senior United States Distict Judge

12